All right, the next case is Sprauvev.WestIndianCoLtd numbers 13-4371 and 14-1151 If you come to Philadelphia, there are signs, so it makes it a lot easier. If you come to Philadelphia, there are signs, so it makes it a lot easier. Good afternoon, Your Honors. I'd like to reserve five minutes for rebuttal. That will be granted. Karen Bentz, Law Offices of Karen A. Bentz, on behalf of Gershwin Sprauvev and Andrea Smith, who are the appellants in this matter. I am in receipt of the court's letter dated November 24th. I'm going to try to proceed down that track. Hopefully, if I get off track, Your Honors will keep me back on track. I think the court wants to hear three distinct items. First of all, whether or not the district court had subject matter jurisdiction to hear the issue, whether or not the complaints actually stated a claim under federal law, and third, given the district court's tautological reasoning, whether or not this court can engage in granting a 12b6 motion at this stage. That's what I think you're asking, but we'll see where we get with this. I think with regard to whether or not the district court had subject matter jurisdiction, it did not lack subject matter jurisdiction. I think the district court ignored precedents, which I find interesting. Jackson v. Wico, 35 VI 269, DVI 1996, argued by Attorney Hodges' mother on behalf of the West Indian Company, and also the McCauley case v. UBI, citing the Febreze case. Can I interrupt you just long enough to try to set one thing to rest? Your opponents have said, if I understood the briefing correctly, that the board is out of this under 12b4 and 5, and they, meaning your clients, haven't done anything to push back on that. Is there a reason why we shouldn't accept that that is in fact the case, that the board was dismissed on a basis that wasn't appealed and that the board is out? I would agree with that, Your Honor. With regard to Jackson v. Wico, that's binding precedent, and also the plain language of the act. How could Jackson v. Wico be binding precedent on us? It's a DVI case. With regard to the district court, they ignored it. They ignored the case. They ignored the plain meaning of the act and also the court's ruling in Jackson v. Wico. Isn't this really not subject matter jurisdiction issues, but issues about failure to state a claim? Subject matter jurisdiction is whether there was a federal question presented. And in your complaint, you say there were direct constitutional violations and 1983 violations. The dispute is whether or not Wico or Mr. Beauchelet, hopefully I'm pronouncing his name correctly, were state actors. So don't we need to first separate out the two? And in the Jackson case, Wico, on page 4, the court goes on and says Wico is similar in nature to the UVI, which is created by the legislature as a body corporate and politic, constituting a public corporation, and is a government instrumentality and proceeded to analyze the case under those grounds. So that's, again, you started saying that the subject matter jurisdiction versus failure to state a claim, which our question was really about the difference in the procedural devices, I think was our first question. The district court and the parties moved under 12b-1 and 12b-6, and the district court sort of talked about them interchangeably. But, in fact, if we look at the district court's decision, weren't they saying there was a failure to state a claim because there wasn't pleading sufficient to find a state actor? And, therefore, No, I don't think they said that at all. I think the district court totally missed the point. The question is whether or not there's a state actor, and I'm saying that there is. Right, but is that an issue under 12b-1 or 12b-6? Well, it would be under both, because if you don't have federal claims, then we don't have a, you can't have a 12b-6, you can't state a claim. Is there any problem with us looking at the district court judge's opinion as a grant of dismissal under 12b-6? Yes. I think under the Johnsrud decision, what that does, and that's the last part of your letter, Your Honors, is whether or not that prejudices me as the plaintiffs in this case. And my plaintiffs clearly would be prejudiced because, in one instance, you're talking about us pleading enough facts to get past the jurisdiction or having subject matter jurisdiction and us bearing the burden of persuasion on that. 12b-6, you're getting at a whole different level where we have the benefit of the facts being heard in our favor or pled in the light most favorable to the plaintiff. The district court mixes it all together to the point where she never really gets to the point of considering the facts, which I think are very clearly stated as federal claims once you get over whether or not WICO is a public company, of which it is. I think that if you look at the totality of it, it is a public company, and I don't know why there was so much attention in the briefs directed to that. Well, we're obviously concerned because we asked you about it. I mean, I guess in your Jackson case, the court seemed to assume it was WICO's capable of state action, but there are arguments on the other side as well. Well, how do you get around Section 8b that says it granted a status and authority of a public company, government instrumentality? Well, what about let's talk about that. There are two cases that tell us that we have to look beyond labels, a case called Leshko, which is the case involving someone who was a foster parent, and there they said, well, they might have been deemed public officials in some way or public employees. That wasn't sufficient. And a case called West, which deals with an individual who has a contract to provide health services to a Department of Corrections. And those cases teach us we have to look beyond labels. I'm sorry this is so long-winded, but you do cite in your complaint the government instrumentality language from the act you just quoted. But isn't that a legal conclusion that we can't presume to be correct? Or are you saying that's a factual conclusion that the district court should have accepted? It's a factual conclusion based on the clear language of the act in Section 8b, also the guiding authority, not binding person on you, in Jackson v. WICO. And then you look at McCauley v. UVI, which I summarize as, if it acts like a duck and it quacks like a duck, it's a duck. And the stock is owned by the PFA. The governor appoints the board. The money from WICO goes to the government. The facts, the operative facts in this case, have to do with my client, Gershwin Sproul, appearing before the legislature of the Virgin Islands, or not appearing, and Mr. Bisholta being very angry about that. How many private corporations get summoned in front of the legislature to talk about their budget? But then the other side points out, look, this particular corporation, whatever it is, it doesn't participate in the government's retirement system. That's irrelevant for purposes. If you look at the McCauley v. UVI case, you have to look at the totality of the factors. In that case, I think WICO is very similar to UVI. And UVI, in the Virgin Isles, I don't know about wherever y'all's from. I just came back from the South. But we have several companies here that are quasi-governmental entities, Megan's Bay Authority, WAPA, UVI, but they are considered under law to be state actors. Well, let me ask you this. You've made arguments and allegations against Mr. Bisholta in his personal capacity, as well as in his official capacity. Even if we were to accept that WICO is an instrumentality of the government of the Virgin Islands, does it necessarily follow that acts taken in his personal capacity were taken under color of state law? If he was clothed under color of state law by becoming the president with the authority unilaterally to terminate both my client's service after 17 years and 30 years and rubber stamp by the board. What's the distinction then between personal capacity and official capacity? Well, when he was acting in terminating him, terminating my clients, he was acting as a state actor unless he was acting for his own personal gain, which I think would be revealed through discovery. I mean, we never even got to the discovery stage in this. Isn't it existing Third Circuit law that we get a shot at amendment? We didn't even get that far. You didn't ask us in your briefs, though, for that. We did? You did. In the district court, maybe, but I didn't see it in our briefs. Did you ask for it in briefs in front of us? I don't. I can't remember, Your Honor. Okay. I can't, to be honest. Okay. We have to get to the question of 12b1 v. 12b6 if the statute is as plain as you say it is, if Section 8B of Act 5826 is clear on its face that this is a public corporation, then the district court judge would have been wrong under either 12b1 or 12b6, right? Yes, Your Honor. That's our position. So does it matter the basis on which the dismissal was made, or is your position that no matter what the judge said, 12b1 or 12b6? I guess I'm wondering in part why the 12b1 v. 12b6 point is important to you if you win either way on your ultimate argument that WICO is a public entity. I think that there's case law that says they're intellectually distinct inquiries, but I don't think for purposes of, Your Honor, it matters. Kerr and Johns, Redd say what they say. Yeah. Okay. But in the end, to you, should it matter? If you're right about WICO, it's going back either way, right? Correct, Your Honor. And I see my time is up, and I'll address that on rebuttal. Okay. By me. Thank you. Good morning, Your Honor. Good morning. Good afternoon, actually. Yeah, that's right. The appellant's argument that affirming the trial court's dismissal based on 12b6 that it's prejudicial due to the distinction and the burden of proof is a red herring. The citation to Johns, Redd versus Carter, as an absolute rule, disregards Kerr packages versus Fidel Court. No, Kerr said pretty specifically, didn't it, Mr. Hodge, that it reaffirmed Johns, Redd in saying there is a shift in the burden of proof and that would be problematic, but it didn't think it was a problem specifically in that case because there hadn't been any assertion or attempt to assert certain things that would have made a difference there, if I remember the case correctly. Here, your opponent has argued vociferously, we've said all along that these folks are state actors and we've never alleged anything that would take us out of the realm of Bell versus Hood. So it's wrong for the, we are prejudiced. Why are they wrong when they say for us, based on what we've alleged, we're certainly prejudiced by being put in a position of bearing the burden of proof when a 12b-1 motion would put the burden, excuse me, when a 12b-6 motion would put the burden on the defense? Well, your Honor, my reading of Kerr packages is that the question is whether or not there's actual prejudice. Not whether or not there's a difference in the burden of proof, but whether or not. That is the prejudice they're citing. Do you not recognize that there would be, if under one motion, 12b-1, the plaintiff has the burden of proof and under the other, 12b-6, you've got the burden of proof, isn't it inherently prejudicial to make the plaintiff bear the burden of proof when you're supposed to bear the burden of proof under 12b-6? In Kerr packages, the plaintiff responded pursuant to 12b-6, and therefore the court found there was no prejudice. Right, and what I'm saying is I'm hearing them say in response, we've not couched our argument in 12b-6 terms. We've responded as we had to to arguments they made, but we've all along taken the position that this is incorrect what the district court did. Are they wrong about that as a matter of the record? Absolutely. Okay. The motions to dismiss relied not only on 12b-1, but 12b-6 specifically. Guico's West Indian Company limited its motions to dismiss specifically relied on 12b-1, 12b-4, 12b-5, and 12b-6, and the 12b-6 portions incorporated by reference the argument from 12b-1, specifically regarding these constitutional rights. So the motion was based on 12b-6. The opposition was also relying on 12b-6. If we took that to its logical extreme, if a court, and take it out of this case for a moment, Mr. Hudson, and say assume a case where a court wrongly treats a 12b-6 motion as a 12b-1, and the opposing party, the plaintiff, argues to meet the arguments made by the defense, both 12b-1 and 12b-6 arguments, won't you always be in a position where you say no prejudice? In other words, I'm having a hard time understanding how a plaintiff can preserve the position that there's prejudice because the burden of proof has been shifted if they're in a position where they have to respond to the defense arguments or be seen as waiving a response. I might not be making myself clear. You're looking at me in a positive way, which tells me I'm not doing a very good job of putting this to you. The situation is one in which the defendant has filed a motion to dismiss based on 12b-1 and 12b-6 explicitly, and then in your opposition you want to say, as the plaintiff, I'll only talk about 12b-1, that's the standard of law you should use, Mr. Judge, as opposed to addressing the rules that were actually in the motion. Is your argument, look, we moved under both, it doesn't much matter? Is that what you're saying? We moved under both rules and it doesn't much matter? We moved under both rules and they responded under both rules. And also the district court sort of credited the allegations as truthful, behaved like it was a 12b-6 motion, so the plaintiff wasn't put at a disadvantage. Am I correct? Right, exactly. And most importantly, the factual issue, you know, in terms of burden of proof, as your Honor seemed to note, is a single sentence from both complaints, paragraph 6, that says WICO is a public entity pursuant to Section 8 of Act 5826, which is a legal conclusion and not entitled to the presumption of truth at all. So regardless of whether you're under 12b-1 or 12b-6, the court has to look to the Act itself to decide whether or not that's accurate. Well, not the Act itself. We have to look beyond the Act, you're saying, right? We have to look for facts. So speaking of facts, how do you reconcile... I have two questions. So one is, speaking of facts, if you look at the allegations in this complaint, putting aside what you've now called a legal conclusion, you know, quoting the Act, there is a representation that 100% of the shares are owned by the PFA, and the case law would tell us or the statute would tell us the PFA is an instrumentality of the government, and that WICO is a port agent. What does that mean? What does it mean with the allegations? WICO serves as the port agent. Does that make it a government actor? I'm sorry, I don't... Port agent? Yeah. WICO serves as the port agent. Do you know what that means? I'm not sure what that's supposed to mean. There's a Virgin Islands Port Authority. Which is something different. Well, what role does the government of the Virgin Islands play in the operation or regulation of WICO? Just as any other corporation. They're free under Act 5826, Section 4. They're free to conduct any business that a corporation can conduct. Well, how does that make... How does that turn them into a private corporation? I noted on page 5 of your answering brief, you say that the fact that they are permitted to do that is something that makes them into, in your view, a private corporation. But I'm having a hard time following that. Why does the fact that they're able to do all things lawful under the corporation law change the fact that they are owned, wholly owned, by the government of the Virgin Islands and that they are evidently directed by a board of directors that's appointed by the government in some fashion and that they report to the legislature? How does that fact that they can do things lawful under the general corporation law change the ownership and the management and direction given to them? It doesn't change those things. However, the fact of the matter is that WICO wasn't created by the legislature. WICO was a pre-existing corporation. Sure, but they took the step, they took the affirmative act of enacting a law. I mean, section 8B is awfully dang clear. It says, and we've all read it, it's granted the status and authority of a public corporation and government instrumentality of the government of the Virgin Islands of the United States and deemed to be a public entity operating on behalf of the government rather than a private corporation. That's a quote from the legislature of the Virgin Islands. How could they be any clearer about this is a public corporation, not a private corporation than the language they chose? In terms of labels, as Judge Schwartz was mentioning, a label doesn't do it in and of itself. It's more than a label, isn't it? I mean, that's like a gigantic tattoo. It's never coming off. Fair enough, but the act itself, that's not the only thing that appears in the act. Section 4 of the act specifically gives the right to conduct all business. Which is why I asked you, how does that undermine section 8? Articulate how that changes the meaning of section 8. Because it establishes a hybrid entity, not purely public. How does it make it a hybrid? I mean, the fact that it's an instrumentality of the government that's allowed to engage in all lawful activities. How does the fact that it's allowed to engage in all lawful activities alter the character of the corporation? The character of the corporation wasn't changed from when it was a private corporation before its stock was purchased by the government. The character of its corporation, so your position is even though the government bought it, and even though the legislature made a statement that we now own it and we're converting this into an instrumentality of the government, that language and those actions are meaningless because it started as a private corporation and it kept doing the same things. Those acts of the legislature are effectively a nullity because they're still doing what they did before the government bought them and said they're ours and our instrumentality. Did I understand you correctly? No, I wasn't. What am I missing? The purpose of Act 5826, if you look at the whereas clauses and the provisions we've already been discussing, was to settle litigation between the government and WICO regarding development rights held by WICO that were granted by Denmark. The purchase of WICO, that was the purpose, the government purpose behind purchasing WICO. It wasn't management of haven site. It wasn't management of contracts with visiting cruise ships. It was the control of the development rights and the act in terms of what it granted in terms of public entity status was tax exemption. What your opponent says in response to that is the defense argument here actually undermines that purpose. The purpose was to make this a public corporation and settle that question once and for all. That history of Dutch colonialism was being put to rest by putting the power and the ownership of this entity in the hands of the government. The defense wants to undo that, which is fundamentally at odds with the intent of the legislature. What's wrong with that reasoning? What I'm saying is the intent of the legislature was to grab control of the development rights. Not the ongoing business enterprise of WICO, which is why in the stock purchase agreement that they enacted as made law, I believe it was section two of the act. If they wanted to do that, Mr. Hodge, they could have negotiated to purchase the redevelopment rights or they could have condemned the redevelopment rights, I suppose, in some fashion and paid for those. But they didn't. They bought the corporation outright and declared it through an act of the legislature to be an instrumentality of the government. I'm having a hard time with your assertion that they only picked up one end of the stick. They decided to pick the whole stick up, didn't they? The whole bundle of rights. The act also made law the stock purchase agreement. The stock purchase agreement stated that WICO's employees were subject to the planned closing act, which is limited to private employers. And that it was subject to the wrongful discharge act, limited to private employers as well. When I say that this is a hybrid entity, there may be some purposes, for instance, the development of the rights granted by Denmark that could be seen as a public entity issue. But in terms of... It's an interesting question. Counsel, shouldn't we be remanding this to the district court to have them look through all this stuff? I mean, it's something interesting here what we've got with WICO. We've got Section 8B, which is pretty clear, but there's a lot of other arguments, I suppose. They're not involved in the... They're not subject to... As private employees, they're like a private employer that they're subject to the wrongful discharge act, right? They're not part of the public... Like the ERISA, for the public employees. We're dealing with something different here. The district court didn't get into a lot of that, did it? No. Okay. The opposing counsel mentioned University of the Virgin Islands as another government instrumentality. The VI legislature in 24 VIC Section 362, Subsection I, defining a public employer, which says that the executive branch of the governor and any agency or instrumentality thereof is a public employer. And then it lists specific instrumentalities. The VI Port Authority, the VI Water and Power Authority, the VI Housing Authority, the University of the Virgin Islands, the Government Development Bank, and the Virgin Islands Public Television System. This was amended in 1999 to add the Government Development Bank. It did not add WICO. How do you reconcile the position that WICO took in the Jackson case? In Jackson, the district court held that they were a government entity for antitrust immunity purposes. And then later in the opinion, it doesn't say it's a state actor, but says the plaintiff's due process claim fails for other reasons. How do you reconcile WICO's position where you wanted to get the benefit of governmental immunity for antitrust purposes, but in this case, you say we're not a state actor? I wasn't part of that case, Your Honor. I'm not actually familiar with it. But, um... Counsel, can I ask you a question? I know your adversary's got seven minutes. Will she be addressing some of these questions? Because perhaps we should be... Hers is a bit different because her client is, uh, Bashilta in his individual capacity. Okay. All right. Okay. Okay. Thank you, Counsel. We'll hear from your co-counsel. Is this yours? Good afternoon, Your Honors. Nicole Morgan on behalf of Joseph Bashilta in his individual capacity. First, I'm going to address the issue as it relates to 12b-6 versus 12b-1. And we submit to you that this Court can properly consider the, or review the District Court's decision based on the 12b-6 grounds. This Court confronts a similar situation as was confronted by the Supreme Court in the United States in Morrison versus the National Australia Bank, 561 U.S. 247, a 2010 case. In that case, the Supreme Court found that the Second Circuit erred in considering the extraterritorial reach under Section 10b of the Securities Exchange Act to raise a question of subject matter jurisdiction. It found that the reach of the Section 10b under the Act is a merits question, whereas subject matter jurisdiction refers to the Court's authority to actually hear a case. And although the Supreme Court found that the District Court had jurisdiction to adjudicate the question, it deemed it unnecessary to remand because the same analysis under 12b-1 justified the dismissal under 12b-6. Let me put the same question to you, Ms. Morgan, that I put to Mr. Hodge. Taking it out of this record in this case, the hypothetical is a judge rules on a motion that's brought under both 12b-1 and 12b-6 by the defense, speaks in terms of 12b-1 and grants a 12b-1 motion, and the plaintiff, of course, was, because both 12b-1 and 12b-6 motions were made, required to respond to both sets of arguments. How would a plaintiff avoid the problem that the plaintiff here says it has of being required to respond to 12b-6 motions and still preserve its argument that it's prejudiced by a shift in the burden of proof of the sort that CARE Packaging and Johnsrud describes? In this particular case, because the appellant actually responded to the motion based on 12b-6 grounds, they would always have to do that, right? That's the question I'm trying to get you to respond. How could they preserve, how could a plaintiff ever preserve its prejudice argument because it's always going to have to respond to the 12b-6 argument too, right? They will have to respond to the 12b-6 argument, Your Honor. But the court can be directed by the Morrison Supreme Court decision where it found that the analysis, as opposed to the labels that were ascribed to the analysis, the actual analysis that the district court employed in this particular case was to delve into whether or not the defendants were state actors, which ultimately made a determination based on whether, on 12b-6 grounds as opposed to whether the court had subject matter jurisdiction to actually hear the case. So the fact that, like in Morrison, the fact that the district court delved into the extraterritorial reach of 10b under the Security Exchange Act and here delved into whether or not the defendants were persons or state actors for the purposes of 1983, there's no prejudice because the same analysis that was employed as it relates to ultimately result in the 12b-1 conclusion was the same analysis that would guide this court in determining whether 12b-6 would apply. So you're saying that because the district court behaved in a way and used words like you use in a 12b-6 opinion, the plaintiff wasn't harmed under these circumstances, am I correct? That's correct. And to follow up on what Judge Jordan was asking is, if you have a scenario where defendants move under 12b-1 and 12b-6 and the plaintiff, not wanting to waive an argument, responds applying 12b-1 and 12b-6, is one of the ways that they could speak up and say, hey, under 12b-6 you've got to accept all my allegations as true. Under 12b-1 you can go outside the pleadings and district court, if you intend to do that, I want discovery, we need more facts, something like that. Is that how the prejudice would be addressed? Yes, Your Honor. In my opinion, if the onus was on the appellants to make affirmative statements to the court in order to preserve their 12b-1 arguments to the extent that the burden of proof was on them for 12b-1 purposes as opposed to on the defendants for 12b-6 purposes. Thank you. Can I ask you a question about something you said in your answering brief? You say on page 16 of your answering brief, quote, Sprov, am I saying that name right? Sprov. Sprov. Sprov. It's like S-P-R-O-V. Sprov. Sprov. Okay. Thanks. Sprov failed to plausibly allege there was any nexus between the territorial government and any supposedly unconstitutional acts allegedly committed by Basulte. Yes. Close quote. Would you agree that if Sprov were an employee of a public corporation that is a government entity that the allegations that are in the complaint would suffice? If you assume that WICO is a public entity, isn't the statements that he was hauled in for reasons that were different from other people, that he was nitpicked at, that he was fired, same thing for Smith, that there wasn't a legitimate basis, why aren't those allegations enough to show a nexus between the government and wrongful acts by Mr. Basulte? Based on section 1983, in order to establish state action, the appellants would have to show a close nexus between the state and the challenged action. And that close nexus is established or determined by whether or not there's explicit direction for the challenged conduct. He is the policy maker, so to speak, in Minnell speak. I mean, for 1983 purposes, we're talking about the CEO of this instrumentality of the government if one accepts that WICO is an instrumentality of the government, which I'm posing to you for purposes of this question. If you accept that WICO is an instrumentality of the government, he's the head of WICO and the things he's doing, which are alleged to be wrongful, and then they've laid them out in some detail. We were treated differently. We were singled out. We were beat up on and thrown out of our jobs, et cetera, et cetera, without good reason. How is that not a close enough nexus on the basis of pleading to establish state action? Because these claims are barred against Mr. Buschelta in his individual capacity in order for them to show a close nexus between him and his individual capacity and the actions that he took or undertook as it relates to the appellants and the state, that being WICO, there would have to be some interconnection or interrelationship between what Mr. Buschelta did in his individual capacity and what the state did. There's no allegations in the complaint to... Are you saying that any time somebody sues a state actor in both official and personal capacity, that by definition the personal capacity allegations have to be different and closer than the allegations made against somebody in an official capacity? There has to be... There needs to be something more? There has to be something that connects or creates the nexus between the individual capacity and the state. And there are no allegations in the complaint. For instance, with respect to Mr. Sprouse first amendment allegations, he does not indicate that there's any explicit direction or strong encouragement by WICO or the WICO board as it relates to the alleged retaliatory termination.  in the complaint. It's completely devoid of any factual allegations as it relates to the role that WICO or the WICO board played in the implementation of the termination decision. And the fact that he sued in his personal and his official capacity, am I correct that you're trying to say that something more needed to be said? It wasn't enough. Absolutely. To say he was the CEO, he treated us wrongly, he had personal motivations to do it. That's not enough. And personal elements, it was solely based on personal elements and that absolutely belies that there was any in his individual capacity that he was working along with or in concert with the government to implement the termination decision. You don't cite any what may I should ask you, do you believe that there must be a close connection between a close nexus between what he does in his  capacity and the state action that that in and of itself establishes that something more needs to be done. Because in order to establish the state action there has to be affirmative acts taken by the government. So if he's standing in the shoes of a personal capacity then there has to be more than he has to be acting in concert with someone else, some governmental entity. You don't have a case but you do  case. So that's what the  requires. If I understood you? That's correct, your honor. With respect to the allegations that do exist in this complaint because you've been focused on he has to have some kind of connection with the state actor. In this case it's WICO. It's 100% owned by the PFA. Your adversary made the point that these individuals were supposed to participate in testimony before the legislature as it relates to the case. So my understanding of what the port agent is is they serve as like a coordinator with the cruise ships that come in and they are the port that WICO is to whom the cruise ships report. So it's like a reservation service to pull in the docket. They're not the   They're the port agent. The case I'm discussing was cited in the briefs. I'm familiar with that. The position we take with respect to WICO status is it's not required to determine whether or not Mr. Buschelta in his individual capacity is a state actor. It's our position that even if WICO is determined to be a governmental entity, the complaints as they stand are insufficient to pass muster to require remand or any other action other than dismissal because they fail to allege sufficient facts to substantiate the claims asserted  Mr. Buschelta in his individual capacity. Thank you. Thank you, counsel. Thank you, Your Honor. Attorney Morgan has succinctly stated the exact point I think that Your Honor has been asking. That's where the prejudice is. 12B6 is a dismissal on the merits. We're out of the park if we lose on 12B6. And we never even got there because our burden was something else. Well, what allegations would you add to this complaint that would be entitled to the presumption of truthfulness if you got to amend? I don't think we need to add anything. And in fact, I think you need to look at the heart of the claims in this matter for both You moved to amend or you asked for permission? We probably did, we always do because Judge Gomez always allows amendment. But you have to look at the heart of the claims in this matter. And the matters in this case were matters of public concern. And I was around when this transfer happened and Governor Fairley at the time called it the last transfer. The last transfer of the vestiges of colonialism transferring these docks, these very lucrative docks to the people of the Virgin Islands. What public function does any of this perform now? What makes it uniquely public function that the state would normally supervise? The state owns it and it's run by the state and the money goes to the government employee's retirement fund and the public finance authority. And it is now owned by the people. That was the whole point of the last transfer. So the question is, are the complaints that Mr. Sproul and Ms. Smith made matters of public concern? And I submit to your honors that it was. We're talking about money. He was supposed to, Mr. Bisholta was very upset they didn't appear in front of the legislature. It's my supposition that and the facts will reveal that he told them they were supposed to be there and then after the facts said after he got lambasted by the legislature and embarrassed he fired them for not appearing or suspended them. Those are matters of money. But put that aside because that goes to whether or not you stated a first amendment claim. I'm focused on the state actor component which is what you need to get out of the 1983 box. You are asking us to credit not just as a legal proposition but as a matter of fact that the section 8 of the act is enough. That's what you want us to hold as a matter of law. Am I correct? The question is whether or not we stated federal act. I think maybe you are underestimating how concerned we are about the state actor issue. This is something different. What relationship does WICO have with the governor of the V.I.? Let's say the governor of the V.I. can the governor overrule him? The governor of the Virgin Islands is the chair of the public finance authority. My client's belief is that the governor wanted him out. We never got to that fact because we didn't get anywhere. She just threw the case out. Is this anywhere in the law? Can we see that there's a veto power or something? What's the relationship between the governor of the V.I. and WICO? It seems to be rather independent. It's got a board of trustees. It's just like U. V.I. I have to keep circling back to that case. It's just like U. V.I. It's a quasi-independent governmental entity that for purposes of the Jackson case was considered a governmental actor. Judge Schwartz nailed it right on the head. She said you can't  both ways. You can't claim you're a governmental actor for immunity and then claim later on that you aren't. Are the employees at U. V.I. a part of your pension system? I believe they are. But your WICO employees are not, right? They don't necessarily have to be to be considered. That's where this Brady case comes in. You have to isolate the definition of governmental employee to that particular section. The issue is where do we draw the line? It's got different attributes than a purely perhaps a purely public corporation, maybe. Where do we draw the line? Is to say this is public and with these attributes it's considered private. Okay. Let's ask it this way. If it's not public, what is it? It's owned by the government. It's run by the government. It has government employees. The money goes to the government. It's supervised by the government. It's supervised by the legislature. How many private corporations run that way? It's a governmental entity. You say they're government employees, but at least the public employees relation board isn't giving them that protection. And the act, I think your adversary pointed out, itself says where the remedies have to come from, the wrongful discharge act, and there was a second one that escapes me right now, which suggests that the legislature was thinking of those employees as being private, not public. They did not have to deal with the WDA, which I litigate under all the time. Good cause. The act says they can only be terminated for good cause. We did. We needed to bring plead in the alternative because we had a state claim or territorial claim. But do the district court do this type of analysis, looking at all the different attributes and applying appropriate law to determine its... I wish they would have certified the question to the Supreme Court, which is what I would do, because it's a very, very, very important issue of  law. And, unfortunately, it was totally conflagrated in this opinion that doesn't really talk about... I mean, PERB has absolutely no authority over the district court of the Virgin Islands, a federal court. It makes no sense whatsoever. Anything else, Your Honors? Okay. Thank you, Counsel. And well argued. We'll take the case under advisement. And like the earlier case, if Counsel has no objection, we'd like to greet Counsel at sidebar.